IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
IN ADMIRALTY

| | |
|---|---|
| Tracy L. Freitag and Ernest Paul Frietag, Jr.<br><br>Plaintiffs,<br><br>vs.<br><br>Myrtle Beach Water Sports, Inc., Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc.<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT** |

**NOW INTO COURT**, comes Plaintiffs complaining of Defendants and allege the following:

## SUBJECT MATTER JURISDICTION

1.     Plaintiffs invoke the subject matter jurisdiction of this Honorable Court under 28 U.S.C. §1333 (Admiralty) over their claims against Defendants under Rule 9(h) of the Federal Rules of Civil Procedure.

## APPLICABLE LAW

2.     This action arises and is governed by the General Maritime Law of the United States and is supplemented by the laws of the State of South Carolina.

## PARTIES

3.     Plaintiff Tracy L. Freitag is a citizen and resident of Somerset County, New Jersey and married to Ernest Paul Freitag, Jr..

4.     Plaintiff Ernest Paul Freitag, Jr. is a citizen and resident of Somerset County, New Jersey and married to Tracy L. Freitag.

1

5.      Myrtle Beach Water Sports, Inc. (hereinafter "Water Sports") is a limited liability company organized under the laws of the state of South Carolina, with its principal place of business in Myrtle Beach, South Carolina conducts business in the State of South Carolina, County of Horry, through its agents, servants and/or employees and derives substantial revenue therefrom. At all relevant times, Water Sports rented, leased, and/or marketed recreational powerboats, including pontoon boats, including the subject Godfrey Aqua-Patio Pontoon boat in South Carolina.

6.      Godfrey Marine, Inc. (hereinafter "Godfrey") is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Elkhart, Indiana. At all relevant times, Godfrey designed, manufactured, tested, assembled, marketed, distributed, and sold recreational pontoon boats, including the including the subject Godfrey Aqua-Patio Pontoon boat and placed such vessels into the stream of commerce through the United States, including in South Carolina, County of Horry, through its agents, servants and/or employees and derives substantial revenue therefrom.

7.      Highwater Marine, LLC (hereinafter "Highwater") is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Elkhart, Indiana. At all relevant times, Highwater designed, manufactured, tested, assembled, marketed, distributed, and sold recreational pontoon boats, including the including the subject Godfrey Aqua-Patio Pontoon boat and placed such vessels into the stream of commerce through the United States, including in South Carolina, County of Horry, through its agents, servants and/or employees and derives substantial revenue therefrom.

8.      Marson International, LLC (hereinafter "Marson") is a limited liability company organized under the laws of the state of Indiana, with its principal place of business in Elkhart,

2

Indiana. At all relevant times, Marson International, LLC designed, manufactured, tested, assembled, marketed, distributed, and sold the handhold or ladder for recreational pontoon boats, including the including the one installed on the subject Godfrey Aqua-Patio Pontoon boat and placed such products into the stream of commerce through the United States, including in South Carolina, County of Horry, through its agents, servants and/or employees and derives substantial revenue therefrom.

9.    Colbin Tool, Inc. (hereinafter "Colbin Tool") is a company organized under the laws of the state of Indiana, with its principal place of business in Syracuse, Indiana. At all relevant times, Colbin Tool, Inc.  designed, manufactured, tested, assembled, marketed, distributed, and sold the handhold or ladder for recreational pontoon boats, including the including the one installed on the subject Godfrey Aqua-Patio Pontoon boat and placed such products into the stream of commerce through the United States, including in South Carolina, County of Horry, through its agents, servants and/or employees and derives substantial revenue therefrom.

10.    Polaris Industries Inc. (hereinafter "Polaris Industries") is a company organized under the laws of the state of Delaware, with its principal place of business in Elkhart, Indiana. At all relevant times, Polaris Industries Inc. designed, manufactured, tested, assembled, marketed, distributed, and sold recreational pontoon boats, including the including the subject Godfrey Aqua-Patio Pontoon boat and placed such vessels into the stream of commerce through the United States, including in South Carolina, County of Horry, through its agents, servants and/or employees and derives substantial revenue therefrom.

11.    Polaris Inc.  (hereinafter "Polaris") is a company organized under the laws of the state of Minesota, with its principal place of business in Medina Minesota. At all relevant times, Polaris Inc. designed, manufactured, tested, assembled, marketed, distributed, and sold

3

recreational pontoon boats, including the including the subject Godfrey Aqua-Patio Pontoon boat and placed such vessels into the stream of commerce through the United States, including in South Carolina, County of Horry, through its agents, servants and/or employees and derives substantial revenue therefrom.

12.     That, upon information and belief, the subject the pontoon boat with accompanying ladder or handhold, which is the subject of this Complaint, were manufactured by Defendant Godfrey, Defendant Highwater, Defendant Godfrey, Defendant Polaris Industries, and/or Defendant Polaris and were rented by Defendant Water Sports for use by their guests and invitees in Horry County, South Carolina.

13.     That, upon information and belief, the subject pontoon boat and accompanying ladder or handhold were designed, manufactured and/or sold by Defendant Godfrey, Defendant Polaris Industries, Defendant Polaris and/or Defendant Highwater for persons to use on the waterways of the United States.

14.     That, upon information and belief, the subject pontoon boat's ladder or handhold were designed, manufactured and sold by Defendant Colbin tool and/or Defendant Marson for persons to use on the waterways of the United States.

15.     That, upon information and belief, the subject the pontoon boat's ladder or handhold, which is the subject of this Complaint, were manufactured or designed by Defendant Colbin tool and/or Defendant Marson and was rented by Defendant Water Sports for use by their guests and invitees in Horry County, South Carolina.

16.     At all times relevant to this Complaint, Defendant Water Sports had control over the pontoon boat and ladder or handhold involved in the subject marine casualty.

17.     At all times relevant to this Complaint, Defendant Godfrey, Defendant Highwater,

Defendant Godfrey, Defendant Colbin tool, Defendant Marson, Defendant Polaris Industries, and/or Defendant Polaris had control over the design and sale of the pontoon boat and ladder or handhold involved in the subject incident.

18.     Defendants are responsible for the action and inactions of their employees and/or agents under the doctrine of *respondeat superior*, agency and/or apparent agency.

19.     That this Honorable Court has jurisdiction over the parties as Defendants have committed a tortious act in whole or in part in the State of South Carolina.

20.     That this Honorable Court has admiralty jurisdiction over the subject matter to this litigation and venue is proper in this Court, as the most substantial acts and omissions giving rise to the causes of action occurred on the navigable waters of the United States in Horry County.

**FACTUAL ALLEGATIONS**

21.     This is a product liability action arising from serious injuries sustained by Plaintiff Tracy L. Freitag (hereinafter "Plaintiff") on August 14, 2023, on the Intracoastal Waterway (hereinafter, "ICW") in Myrtle Beach, South Carolina, while aboard a Godfrey Aqua-Patio Pontoon boat. Plaintiff and her family were aboard a pontoon boat manufactured and sold by Defendant Godfrey, Defendant Polaris Industries, Defendant Polaris and/or Defendant Highwater, which they rented for the day from Defendant Water Sports for use on the ICW.

22.     At all material times, the subject ladder or handhold were designed, manufactured and sold by Defendant Colbin tool and/or Defendant Marson.

23.     On or about the same day and time, Plaintiff and her family reached a spot on the ICW where they intended to anchor. Plaintiff attempted to throw the anchor into the water. As she did so, Plaintiff slipped on the decking and fell onto a pole protruding upward from the vessel's ladder.

24. As a result of the fall, Plaintiff was impaled by the vessel's ladder or handhold through her vagina, sustaining severe and painful injuries.

25. That the unreasonably dangerous and defective condition of the vessel's ladder or handhold directly and proximately caused Plaintiff's injuries and the damages which give rise to this litigation.

26. That, upon information and belief, the pontoon boat and ladder or handhold were designed, developed, manufactured, produced, and sold by Defendant Godfrey and Defendant Highwater.

27. That Defendant Water Sports rented and provided the pontoon boat for use by its customers and invitees, including Plaintiff, on the ICW in Horry County, South Carolina.

28. That as a direct and proximate result of Defendants' negligence, gross negligence, and recklessness, Plaintiff suffered severe bodily injuries when she was impaled by the vessel's ladder or handhold.

29. That, upon information and belief, Defendant Water Sports maintained significant control over the pontoon boat and ladder or handrail on August 14, 2023, and at the time of the subject incident and that the subject pontoon boat and ladder or handrail were in the same condition when they left Defendants' possession and were sold to Defendant Water Sports.

30. That Plaintiff did not have knowledge of the dangerous and defective condition of the ladder or handhold on the pontoon boat.

31. At all times relevant hereto, Plaintiff was using the pontoon boat in a manner that was intended and reasonably foreseeable to Defendants at the time of the subject incident.

32. That Defendants had no signage or warnings posted on or near the pontoon boat or its ladder or handhold to warn of the dangerous and defective condition then and there existing.

33.    As a direct and proximate result of Defendants' negligence, gross negligence, and recklessness, including but not limited to negligent hiring, negligent training, and negligent retention of Defendants' employees, who acted or failed to act within the course and scope of their employment, Plaintiff suffered severe bodily injuries.

34.    Defendants had a duty to take reasonable action to protect their users, customers, and members of the public, including Plaintiff, from the foreseeable risk of physical harm.

35.    That Defendants owed a duty to Plaintiff, and to any person who would foreseeably come into contact with the pontoon boat and its ladder or handhold, to exercise reasonable caution and care in the business of manufacturing, selling, and renting pontoon boats for use on the ICW.

36.    Defendants were aware of the danger posed by the ladder or handhold on the pontoon boat, and negligently and recklessly failed to notify their customers and the public of the danger and risks of harm involving the ladder on the pontoon boat to the public, and specifically, Plaintiff, of the danger and risk of harm posed by the ladder or handhold.

37.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has had to undergo multiple painful surgeries, attend numerous doctor appointments, undergo numerous tests, attend physical therapy, attend therapy, and undergo other medical procedures.

38.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered severe bodily injuries, mental and emotional anguish, loss of consortium, wage loss, scarring, loss of enjoyment of life medical expenses, and other damages, together with such other harm and damages of Plaintiff to be proven at trial.

39.    As a direct and proximate result of Defendants' acts and omissions, the marital relationship between Plaintiff and Plaintiff Ernest Paul Frietag, Jr. has suffered and is not the same as it was before the marine casualty in question.

40.     Plaintiff Ernest Paul Frietag, Jr. has had to care for Plaintiff due to her injuries.

41.     As a direct and proximate result of Defendants' acts and omissions, Paul Ernest Paul Frietag, Jr. suffered loss of consortium with his wife, and other damages, together with such other harm and damages of Plaintiff Richard Ernest Frietag to be proven at trial.

**FOR A FIRST CAUSE OF ACTION**
**STRICT LIABILITY**
*As to All Defendants*

42.     Plaintiffs herein realleges and reiterates all previous paragraphs of this Complaint as fully as if set forth in this paragraph in its entirety.

43.     The pontoon boat and its ladder or handhold manufactured and/or designed by Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. that impaled Plaintiff was sold by Defendants as new, tangible property.

44.     That Godfrey Marine, Inc., Highwater Marine, LLC, Polaris Industries Inc. and Polaris Inc. were and are engaged in the business of selling pontoon boats equipped with ladders or handholds such as the pontoon boat and ladder or handhold which are the subject of this Complaint.

45.     That Marson International, LLC and Colbin Tool Inc. were and are engaged in the business of selling ladders or handholds such as the ladder or handhold which are the subject of this Complaint.

46.     That the ladder or handhold on the pontoon boat injured and damaged Plaintiff because the subject ladder or handhold were in a defective condition unreasonably dangerous to the user, consumer, members of the general public, and to Plaintiff.

47.     That the subject ladder or handhold that severely injured Plaintiff resulting in severe

and painful injuries because the subject ladder was in a defective condition unreasonably dangerous to the user, consumer, members of the general public, and to Plaintiff.

48. That the subject ladder or handhold, at the time of the subject incident on August 14, 2023, was in essentially the same condition as when it left the hands of Defendants.

49. That the subject ladder was defectively designed in that that it was unreasonably dangerous to the consumer, user, the general public, and to Plaintiff, given the conditions and circumstances that foreseeably attend the use of the product.

50. At the time of the subject incident and all times relevant to this Complaint, the subject ladder or handhold was defective in the manufacture, and/or design, and/or warnings/marketing/packaging, of the subject ladder or handhold such that the subject ladder or handhold and pontoon boat was unsafe and unfit to be placed into the stream of commerce for use.

51. At the time of the subject incident and all times relevant to this Complaint, the subject ladder or handhold and pontoon boat was not merchantable and reasonably suited to the use intended, which proximately caused Plaintiff's and Plaintiff Ernest Paul Frietag, Jr.'s injuries and damages.

52. That as the manufacturer, designer, seller, and/or distributor of the subject pontoon boat and ladder or handhold, Defendants owed a duty to manufacture, design, make, sell and market a product that was free from defects and was not unreasonably dangerous to persons that foreseeably would come into contact with the product, specifically the subject ladder.

53. That it was foreseeable to Defendants that the subject ladder or handhold would impale a person causing injuries.

54. The pontoon boat and its ladder or handhold were in a defective condition unreasonably dangerous to the user and/or consumer, to the general public, and to Plaintiff when

they left control of Defendants; they remained so, without material change or alteration up to and including the time of the incident which occurred on August 14, 2023, in that:

a) As designed, manufactured, and sold, the pontoon boat's ladder or handhold lacked a protective cap, cover, or other safeguard on its upper end, leaving a bare, metal tube protruding upward from the swim platform in a manner that created a serious risk of impalement injury to users;

b) As designed, manufactured, and sold, the pontoon boat's swim platform decking, though textured, lacked adequate additional safeguards, mats, or design features near the ladders or handhold to prevent a user from slipping and falling onto the exposed, unprotected handrail end;

c) The subject pontoon boat and ladder or handhold had manufacturing defects, defective design, and/or warning or instruction defect;

d) The subject pontoon boat and ladder or handhold were in a defective condition unreasonably dangerous for their intended use;

e) The danger associated with the subject handrail's design outweighed its utility;

f) The subject handrail's design was unreasonably dangerous, inadequate, unsafe, hazardous, and defective;

g) Defendants failed to provide warnings or instructions adequate to safeguard against injuries;

h) The pontoon boat and ladder or handhold lacked any safeguards or design features — such as a cap, ball end, rounded fitting, or cover — to eliminate or minimize the risk that a user could fall onto the exposed, open end of the handrail, as occurred in this instance, creating a serious risk of injury to the general public and users;

i) The pontoon boat and ladder or handhold lacked adequate warnings and instructions alerting users and persons of the hazards associated with their design, of the gravity of the risk of injury, and of the precautionary measures to be taken to avoid injury; and

j) Other acts to be proven at trial.

55.     The combined defective conditions described, and each of them individually, was a legal and foreseeable proximate cause of the injuries and damages described herein in this

Complaint. The pontoon boat and ladder or handhold were defective and unreasonably dangerous while in the control of Defendant in that they were not reasonably safe for foreseeable use. The risk of severe injury and death associated with the design of the pontoon boat and ladder or handhold far outweighed the utility of the product.

56.    Defendants placed into the stream of commerce a product, namely the subject pontoon boat and ladder or handhold, which was defective, unfit, unusually and unreasonably dangerous to the intended users, consumers, and foreseeable bystanders of the product, including Plaintiff.

57.    The injuries and damages suffered by Plaintiff were directly and proximately caused by the defective and unreasonably dangerous condition of the subject pontoon boat and ladder or handhold.

58.    Plaintiff and Plaintiff Ernest Paul Frietag, Jr. sustained injuries and damages as a direct and proximate result of the negligent, reckless, willful, wanton and grossly negligent acts and/or delicts as enumerated here and above, by Defendants, through their agents, servants and/or employees.

59.    That the subject pontoon boat and ladder or handhold were a product produced, manufactured, designed, created and sold by Defendants.

60.    Plaintiff incurred severe physical harm which caused her to undergo physical pain and suffering and will continue to cause her to undergo physical pain and suffering.

61.    Plaintiff has incurred financial loss of wages and personal leave, loss of pension benefits and related medical bills and expenses.

62.    The injuries and damages suffered by Plaintiff and Plaintiff Ernest Paul Frietag, Jr. were directly and proximately caused by the above negligent and reckless acts of Defendants.

63.     Defendants are strictly liable for all damages caused by the defective condition of the subject pontoon boat and ladder or handhold.

## FOR A SECOND CAUSE OF ACTION
### NEGLIGENCE
### *As to Defendants*

64.     Plaintiffs herein realleges and reiterates all previous paragraphs of this Complaint as fully as if set forth in this paragraph in its entirety.

65.     That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. owed to Plaintiff the duty to exercise reasonable care in the design, manufacture, marketing, distribution and sale of the subject pontoon boat and ladder or handhold.

66.     That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. owed the duty to exercise reasonable care in the design, manufacture, marketing, distribution and sale of subject pontoon boat and ladder or handhold to persons who would foreseeably come into contact with their product (subject pontoon boat and ladder or handhold) including Plaintiff.

67.     That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. failed to exercise due care in designing, manufacturing, marketing, distributing and selling the subject pontoon boat and ladder or handhold.

68.     That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. breached their duty to exercise reasonable care to adopt a safe design for its product.

69.     That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson

International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. had a duty to take reasonable precautions which required them to install or include a safety device with the subject pontoon boat and ladder or handhold. That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. failed to install or include a safety device with the subject pontoon boat and ladder or handhold.

70.    That the defective condition of the subject pontoon boat and ladder or handhold arose as a result of the negligent and reckless conduct of Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc.

71.    That the failure of Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. to install a safety or protective device with the subject pontoon boat and ladder or handhold to prevent it from impaling persons created an unreasonable risk of injury to users, consumers, members of the public, including Plaintiff.

72.    That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. had a duty to include a reasonable protective or safety device to protect persons against the foreseeable risks of injury and death from being impaled by ladder or handholds manufactured, designed and sold by them, including the subject ladder or handhold.

73.    That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. made the subject pontoon boat and ladder or handhold under a plan or design which made it dangerous for the uses for which it was manufactured. That Defendant Defendants Godfrey Marine, Inc., Highwater

13

Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. failed to exercise reasonable care in the adoption of a safe plan or design for the subject pontoon boat and ladder or handhold and that Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. did not adopt a safe plan or design for its pontoon boats and ladder or handholds including the subject pontoon boat and ladder or handhold, at all times relevant to this Complaint.

74.     That Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. had a duty to persons whom Defendant Godfrey and Defendant Highwater should have expected to use the subject pontoon boat and ladder or handhold and to persons whom Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. should expect to be endangered by the subject pontoon boat and ladder or handhold such as members of the public including Plaintiff.

75.     That Plaintiff sustained physical harm caused by the failure of Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. to exercise reasonable care in the adoption of a safe plan or design for their pontoon boats and ladder or handholds including the subject pontoon boat and ladder or handhold.

76.     In their conduct, Defendants Godfrey Marine, Inc., Highwater Marine, LLC, Marson International, LLC, Colbin Tool Inc., Polaris Industries Inc. and Polaris Inc. breached their duties and were careless, negligent, reckless, grossly negligent, willful and wanton in the design, manufacturing, distribution and sale of subject pontoon boat and ladder or handhold in one or all of the following particulars to-wit:

14

a) In failing to adequately test or evaluate the design and operating characteristics for the purpose of identifying the hazards posed by the design, the gravity of the risk of injury and the reasonable engineering alternatives to be taken to eliminate the hazard or adequately minimize the exposure and the risk of injury and death;

b) In failing to provide reasonably necessary safeguards or design measures to prevent an injury, such as occurred in this instance, from occurring;

c) In failing to incorporate and provide adequate warnings as part of the fundamental design alerting consumers, users, persons who would foreseeably come into contact with the subject product, and bystanders of the subject product of the hazards arising from the product and its design, of the grave risk of injury and death and of the necessary precautionary measures to be taken to avoid injury and death;

d) In failing to conduct adequate tests and studies before, during and after the design and manufacture of the subject pontoon boat and ladder or handhold to determine whether the product was reasonably safe under foreseeable conditions of use;

e) In failing to conduct adequate quality control procedures on all materials and parts incorporated into the subject pontoon boat and ladder or handhold;

f) Failing prior to August 14, 2023, to recall the subject pontoon boat and ladder or handhold that they had sold, and knew was in use, or otherwise supply modification kits or launch a warning to take other action where a reasonably prudent manufacturer would have taken to minimize product dangers of operation about which they knew or should have known existed, but about which the users, consumers, owners, operators and/or general public were unaware;

g) In otherwise failing to use due care as shall be revealed during the discovery process; and

h) Other acts of negligence to be shown at trial.

Any one or more of which acts of commission and/or omission were a proximate cause of the injuries suffered by Plaintiff and Plaintiff Ernest Paul Frietag, Jr..  Said acts of commission and/or omission were in violation of the laws of the State of South Carolina.

**FOR A THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
*As to Defendants*

15

77.    Plaintiffs herein realleges and reiterates all previous paragraphs of this Complaint as fully as if set forth in this paragraph in its entirety.

78.    In manufacturing, labeling, promoting, distributing, selling and placing in the stream of interstate commerce, Defendant Godfrey and Defendant Highwater impliedly warranted that the same was merchantable and fit for the ordinary purposes for which such pontoon boats and ladder handrails are used.

79.    The subject pontoon boat and ladder handrail were not merchantable in that, as designed or manufactured it caused injury to Plaintiff.

80.    Defendant Godfrey and Defendant Highwater breached these duties by selling the defective pontoon boats and ladder handrails including the subject pontoon boat and ladder handrail while having actual and/or constructive knowledge of the products' defects.

81.    As a direct and proximate result of the breach of the implied warranty of merchantability by Defendant Godfrey and Defendant Highwater, Plaintiff has suffered significant injuries and damages as set forth herein in this Complaint.

### FOR A FIFTH CAUSE OF ACTION
#### NEGLIGENCE AND GROSS NEGLIGENCE
*As to Defendant Water Sports*

82.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if they were set forth in this paragraph in its entirety.

83.    Defendant Water Sports in the conduct of its business, rented, controlled, and advertised the pontoon boat and ladder handrail that ultimately impaled Plaintiff to profit off of the use of the subject pontoon boat and ladder handrail.

84.    That Defendant Water Sports knew that the use of the subject pontoon boat and ladder handrail was unreasonably dangerous as designed and manufactured, was hazardous and

posed a risk of injury to users, and to the public, including Plaintiff.

85.     That Defendant Water Sports through its agents, servants and/or employees knew or should have known that the subject pontoon boat and ladder or handhold were in an unreasonably dangerous condition and that they had a dangerous and defective design.

86.     That Defendant Water Sports had a duty to prevent and/or warn of foreseeable risks of harm, injury and death to persons who would foreseeably come into contact with the subject pontoon boat and ladder or handhold, including Plaintiff.

87.     That Defendant Water Sports, through its agents, servants and employees knew the subject pontoon boat and ladder or handhold had an exposed, unprotected end that could foreseeably cause impalement injuries to a person who fell against it.

88.     Defendant Water Sports through its agents, servants and employees, were negligent, grossly negligent, willful, wanton, careless, and reckless at the above-mentioned time and place, in the following particulars, to wit:

a)  In failing to take reasonable action to protect the public, invitees and Plaintiff from the foreseeable risk of physical harm caused by the unreasonably dangerous pontoon boat and ladder handrail;

b)  In failing to ensure that a protective or safety device was installed on the ladder handrail to prevent it from presenting an exposed, unprotected end capable of causing injury to renters and passengers;

c)  In renting a defective pontoon boat to Plaintiff and her family for use on the ICW when Defendant Water Sports knew or should have known the ladder handrail was unreasonably dangerous and defective and could cause serious injury;

d)  In choosing not to implement proper measures, policies, and/or procedures so as to prevent injury from occurring;

e)  In renting an unsafe vessel;

f)  In failing to establish policies and procedures related to pre-rental inspections and safety checks of its rental vessel;

g) In violating policies and procedures regarding pre-rental inspections, post-accident reporting, post-accident investigations, maintenance, and rental logs;

h) In failing to properly train and supervise its employees, customers, guests, renters, and agents;

i) In failing to properly hire, train and fire its employees, staff, and/or agents;

j) In failing to staff adequate and competent personnel and employees so as to ensure the rights and safety of the public, invitees, and Plaintiff;

k) In failing to warn Plaintiff and her family of the dangerous and defective condition of the ladder handrail and the foreseeable risk of injury;

l) In failing to prevent the pontoon boat from being rented to Plaintiff and her family in an unreasonably dangerous and defective condition;

m) In failing to monitor the condition of its rental fleet, including the subject pontoon boat;

n) In violating the statutes and ordinances of the State of South Carolina; and

o) In such other particulars as the evidence at trial may show;

89.     Any one or more of which acts of commission and/or omission were a proximate cause of the injuries suffered by Plaintiffs and were in violation of the statutory laws of the State of South Carolina and the general maritime law of the U.S.

90.     As a direct and proximate result of the negligent, grossly negligent, careless, reckless, willful and wanton acts and/or omissions of Defendant Water Sports, through its agents, servants and/or employees, Plaintiff suffered severe bodily injuries and Plaintiff Ernest Paul Frietag, Jr. suffered damages.

91.     Plaintiffs are informed and believes that they are entitled to judgment against Defendant Water Sports in this matter for actual, special, consequential, and punitive damages in an amount to be determined through this Honorable Court.

**FOR A FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**As to Defendant Water Sports**

18

92. Plaintiffs herein realleges and reiterates all previous paragraphs of this Complaint as fully as if set forth in this paragraph in its entirety.

93. Plaintiff was an intended beneficiary of the time charter party of the between her family member and Defendant Water Sports for the subject pontoon boat.

94. Defendant Water Sports had a duty under the charter party to Plaintiff to provide a seaworthy vessel that was reasonably fit for its intended use.

95. The subject pontoon boat and ladder or handhold were in an unreasonably dangerous condition and were dangerous and a defective design.

96. Due to said dangerous condition and defective design at the commencement of the time charter, the subject pontoon boat was not in a seaworthy condition and not reasonably fit for its intended use.

97. Defendant Water Sports was in breach of its time charter by providing an unseaworthy vessel, the subject pontoon boat, that was not reasonably fit for its intended use.

98. This was in breach of the implied and actual duty to provide a seaworthy vessel.

99. The said breach by Defendant Water Sports was a cause of the injuries suffered by Plaintiffs.

100. As a direct and proximate result of the breach or omissions of Defendant Water Sports, through its agents, servants and/or employees, Plaintiff suffered severe bodily injuries and Plaintiff Ernest Paul Frietag, Jr. suffered damages.

### DAMAGES

101. Plaintiffs herein realleges and reiterates all previous paragraphs of this Complaint as fully as if set forth in this paragraph in its entirety.

102. Plaintiff, as the direct and proximate result of the aforesaid causes of action:

a) Was severely, seriously, painfully, and permanently injured;

b) Suffered injuries about various parts of her body;

c) Was and will be subjected to the administration of strong and potent drugs and medications;

d) Suffered extreme and painful injuries to her person from which Plaintiff is informed and believes that she will have permanent adverse effect and disability;

e) Suffered injuries that required medical treatment and will require medical care and treatment in the future;

f) Has incurred and will incur in the future, substantial medical and doctor bills due to her injuries;

g) Was and will be subjected to extreme pain, mental anguish, emotional distress, loss of enjoyment of life, suffering and discomfort over a long period of time;

h) Has and will suffer a financial loss in the form of wages, personal and sick days, pension benefits and future earning capacity;

i) Has been and will be prevented from attending to her usual and ordinary activities of daily living;

j) Has suffered damage to her marital relationship with her husband; and

k) All other damages, including actual, special, consequential and punitive, in an amount to be determined by Honorable Court.

Accordingly, Plaintiffs are informed and believes that they are entitled to actual, special, consequential and punitive damages sufficient to reflect the injuries that they sustained against Defendants, for Defendants' actions and inactions in creating, maintaining or failing to correct a dangerous condition upon on the subject pontoon vessel.

20

**WHEREFORE**, Plaintiffs pray for judgment against Defendants in an amount to be determined by the trier of fact, for actual, special, consequential and punitive damages; for the costs of this action; and for such other relief as this Honorable Court may deem just and proper.

**BLUESTEIN LAW FIRM, P.A.**
By: s/S. Scott Bluestein
S. Scott Bluestein
Federal ID No. 6891
266 W Coleman Blvd., Suite 103 Mount Pleasant, SC 29464
Post Office Box 22253 Charleston, SC 29413
Telephone: 843-577-3092
Facsimile: 843-577-3093
Email: scott@boatinglaw.us


AND

**THE MAGUIRE LAW FIRM, LLC**

Ian D. Maguire (Federal ID No. 6282)
G. Michael Smith (Federal ID No. 3904)
Tiffany K Buffkin (Federal ID No. 13284)
1600 North Oak Street, Suite B
Myrtle Beach, SC 29577
Telephone: (843) 361-7549
Facsimile: (843) 361-7048
tiffany@maguirelawfirm.com

***Attorneys for Plaintiffs***

Date:  August 11, 2026